FILED

2003 MAY 19 P 3:46

CLERK, US DISTRICT COURT

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA :

v. : CASE NO. 3:03-cr-94-J-20TEM

CARLOS MARIO QUICENO-VELASQUEZ

# PLEA AGREEMENT

## A. Particularized Terms

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Paul I. Perez, United States Attorney for the Middle District of Florida, and the defendant, CARLOS MARIO QUICENO-VELASQUEZ, and the attorney for the defendant, W. Charles Fletcher, mutually agree as follows:

### 1. Count(s) Pleading To

The defendant shall enter a plea of guilty to Count One of the Indictment. Count One charges the defendant with conspiracy to distribute heroin, the amount of the heroin being 1 kilogram or more, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).

### 2. Minimum and Maximum Penalties

Count One is punishable by a mandatory minimum term of imprisonment of at least 10 years and up to life, a fine of $4,000,000, a term of supervised release of at least 5 years, and a special assessment of $50 per felony count for offenses committed prior to April 24, 1996, $100 per felony count thereafter; for organizations the amounts are "$200" and "$400" respectively, said special assessment to be due on the

Defendant's Initials CQ

SCANNED

CERTIFIED A TRUE COPY
SHERYL L. LOESCH, CLERK
U. S. DISTRICT COURT
By: [signature]
Deputy Clerk

AF Approval [initials]

44

date of sentencing. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3. **Elements of the Offense(s)**

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty. The elements of Count are:

First: That two or more persons in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the indictment; and

Second: That the defendant, knowing the unlawful purpose of the plan, willfully joined in it.

4. **Counts Dismissed**

At the time of sentencing, the remaining count against the defendant, Count Two, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5. **No Further Charges**

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6. **Acceptance of Responsibility**

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a three-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1. The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

7. **Cooperation - Substantial Assistance to be Considered**

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed

subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8. **Cooperation - Responsibilities of Parties**

a. The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b. It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1) The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2) The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3) The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this

agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4) The government may use against the defendant its own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5) The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

B. **Standard Terms and Conditions**

1. **Restitution, Special Assessment and Fine**

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offenses(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1) (limited to offenses committed on or after April 24, 1996); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663 (limited to offenses committed on or after November 1, 1987) or § 3579, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant

to this agreement. On each count to which a plea of guilty is entered, the Court shall impose a special assessment, to be payable to the Clerk's Office, United States District Court, and due on date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2. **Supervised Release**

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. **Sentencing Information**

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit, upon execution of this plea agreement, an affidavit reflecting the defendant's financial condition. The defendant further agrees, and by the execution of this plea agreement, authorizes the United States Attorney's

Office to provide to, and obtain from, the United States Probation Office or any victim named in an order of restitution, or any other source, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.

4. **Sentencing Guidelines and Recommendations**

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence and the sentencing guidelines, if any, applicable to defendant's case will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant understands that the Court is required to consider any applicable sentencing guidelines but may depart from these guidelines under some circumstances. Defendant acknowledges that defendant and defendant's attorney have discussed the sentencing guidelines and defendant understands how the guidelines are applicable to defendant's case. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding the potential application of the sentencing guidelines to defendant's case and any recommendations by the government are not binding on the United States Probation Office or the Court and that,

should any recommendations be rejected, and regardless of the guidelines calculated by the Probation Office or the Court, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Probation Office or the Court may make with regard to the defendant's sentencing guidelines or sentence, whether or not such decision is consistent with the government's recommendations contained herein.

5. **Appeal of Sentence; Waiver**

The defendant understands and acknowledges that defendant's sentence will be determined and imposed in conformance with the Comprehensive Crime Control Act of 1984 and the federal sentencing guidelines. Defendant is also aware that a sentence imposed under the sentencing guidelines does not provide for parole. Knowing these facts, the defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum set forth for the offense and pursuant to the sentencing guidelines and expressly waives the right to appeal defendant's sentence, directly or collaterally, on any ground, including the applicability of the "safety valve" provisions contained in 18 U.S.C. § 3553(f) and USSG §5C1.2, except for an upward departure by the sentencing judge, a sentence above the statutory maximum, or a sentence in violation of the law apart from the sentencing guidelines; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

Defendant's Initials ____

6. **Middle District of Florida Agreement**

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

7. **Filing of Agreement**

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

8. **Voluntariness**

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine

Defendant's Initials ____

the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

9. **Factual Basis**

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

10. **Entire Agreement**

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no

other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

11. **Certification**

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 17th day of May, 2003.

PAUL I. PEREZ
United States Attorney

CARLOS MARIO QUICENO-VELASQUEZ
Defendant

By: D. RODNEY BROWN
Assistant United States Attorney

W. CHARLES FLETCHER
Attorney for Defendant

BRIAN M. KANE
Assistant United States Attorney
Chief, Jacksonville Division

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v. Case No. 3:03-cr-94-J-20TEM

CARLOS MARIO QUICENO-VELASQUEZ

## PERSONALIZATION OF ELEMENTS

1. Do you admit that, from on or about March 16, 2003 through on or about March 25, 2003, at Jacksonville and Orlando, in the Middle District of Florida, and elsewhere, you, Omar Gonzalez, Cristina Maria Pulgarin, and other persons came to a mutual understanding to try to accomplish a common and unlawful plan, that is, to distribute heroin, a Schedule I controlled substance, the amount of the heroin being 1 kilogram or more?

2. Did you, knowing the unlawful purpose of the plan, willfully join in it by, among other things, obtaining approximately 5,011 grams of heroin contained in a "Samsonite" suitcase from Cristina Maria Pulgarin in Orlando and transporting the heroin from Orlando to Jacksonville on a Greyhound bus on March 2~~3~~4, 2003?

~~3. Defendant was not told how much heroin he was carrying for Cristina Pulgarin on March 24, 2003. The suitcase was already packed and the heroin was hidden inside of the walls of the suitcase. Defendant believed he was carrying approximately 1 kilogram of heroin, but admits that the weight of the heroin seized from him was 5,011 grams.~~

Defendant's Initials CQ

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v. Case No. 3:03-cr-94-J-20TEM

CARLOS MARIO QUICENO-VELASQUEZ

## FACTUAL BASIS

During the period from on or about March 16, 2003 through on or about March 25, 2003, at Jacksonville and Orlando, in the Middle District of Florida, and elsewhere, Carlos Mario Quiceno-Velasquez ("Quiceno"), Omar Gonzalez ("Gonzalez"), and Cristina Maria Pulgarin ("Pulgarin"), and other persons conspired and agreed to distribute a quantity of heroin, a Schedule I controlled substance, from Orlando to New York City. On or about March 16, 2003, Gonzalez, a resident of Orlando, contacted Quiceno in Rhode Island and asked Quiceno if Quiceno would transport a suitcase containing heroin from Orlando to New York City, ~~for a woman named "Cristina" (Pulgarin)~~. Pulgarin obtained this heroin from a source of supply who had had the heroin transported from Miami to Orlando. Several days later, Quiceno contacted Gonzalez and agreed to transport the heroin to New York City. ~~Pulgarin~~ Either Omar or Pulgarin purchased an airline ticket for Quiceno, and Quiceno flew from Providence, Rhode Island to Orlando on March ~~22~~ 23, 2003. Gonzalez picked up Quiceno at the Orlando International Airport and brought Quiceno to Gonzalez's residence in Orlando. Later, Pulgarin and ~~her husband, William~~ a man, brought a maroon "Samsonite" suitcase to Gonzalez's residence and gave it to Quiceno. This suitcase had a hidden compartment which contained

Defendant's Initials ______

approximately 5,011 grams of heroin. Pulgarin also gave Quiceno $300 for travel expenses and promised Quiceno an additional $2,000 upon delivery of the suitcase to other individuals in New York City. Pulgarin confirmed to Quiceno and Gonzalez that the suitcase contained heroin, and Pulgarin instructed Quiceno to deliver the suitcase to the bus station in New York City where he would be met by others who would recognize him and receive the suitcase. Pulgarin took a cell phone from ~~instructed~~ Maria Gonzalez to give Quiceno ~~a cellular telephone~~ for use in contacting Pulgarin when he arrived in New York, ~~and Maria Gonzalez did so~~. Gonzalez agreed to take Quiceno to the Greyhound Bus station in Orlando, and Gonzalez expected to receive some money for his participation of the transportation of the heroin.

On March 23, 2003, Gonzalez took Quiceno and the suitcase containing the heroin to the Greyhound Bus station, and Quiceno purchased a one-way bus ticket ~~for Quiceno~~ to New York City. Quiceno boarded the bus and departed with the suitcase. Early on March 24, 2003, Quiceno's bus made a routine stop in Jacksonville, Florida, where he was observed by law enforcement officers inside the bus terminal. The officers approached Quiceno, and after a brief conversation, the officers conducted a consensual search of the suitcase. During this search, the officers discovered the heroin.